The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable John W. Turner presiding. Thank you. Good morning, counselors. Morning. First case today is Mikoff, special administrator of the estate of Bonnie Stone versus Unlimited Development, Inc. in Jerseyville Manor. That's case number 4-2-3-0-5-1-3. Appearing for the appellant today is Lanny Darr II and for the appellee is Donna Fudge. Mr. Darr, are you ready to proceed? Yes, your honor. Please do so. May it please the court, counsel. First of all, I apologize. I have a cold and if I apologize in advance, but thank you for the opportunity to present this court with argument today seeking to reverse and remand the Jersey County Circuit Court orders of January 24, 2023 and May 12, 2023. As the court is aware, there is a jurisdictional challenge in this matter, so I'm going to briefly address this. The jurisdictional challenge revolves around whether the plaintiff's motion to reconsider the order of January 24, 2023. Counsel, you lost your audio. I lost my audio? Mr. Darr. Can you hear me now? Yes. Yes. I'm sorry. I'm not sure exactly where I lost it, but there's a jurisdictional challenge and it revolves around whether my motion to reconsider the order of January 24th told the time for filing a notice of appeal. We did it. We believe it did and that jurisdiction would be appropriate under Rule 303 because the court's order claimed to be or stated that it was final and appealable as to all issues in all parties and it did not carve out or seek to retain jurisdiction over any matters. In fact, the January 24, 2023 stated that the issues involving scope or interpretation of the arbitration agreement has been delegated to the arbitrator and the court declined to consider the challenges to its enforceability. Had the court, if this was going to be an interlocutory order, it would have had to have resolved some issue for itself or carved out some issue that it was retaining jurisdiction on, such as the wrongful death claims, which it should have, but in this case, it did not. So, we believe that that rendered it final and appealable as to all parties and all issues and therefore, jurisdiction was appropriate under Rule 303, but even if it was construed to an interlocutory order or the January 24, 2023 was interlocutory, it still was not dispositive as to all issues in all parties or was dispositive as to all issues of all parties and this court would still have jurisdiction under 307A. There is some inconsistency in the appellate opinions on this point, but there are several that hold that when the party is seeking to dissolve an injunction or a matter in the nature of an injunction, sending it to arbitration, that they can test or try to dissolve that injunction and still preserve their rights to appeal. We've addressed those issues in our brief, and that's Clark v. Country Mutual, which is a 5th District case out of 1985, and also Property Management Limited v. Houza, Inc., which was a 5th District case out of 1973 that both found that the plaintiff or the party could preserve their rights to pursue the appeal after trying to test an order that referred the matter to arbitration. Counsel, didn't the trial court indicate that the matters before it were stayed pending arbitration? It did use the word stayed, but it didn't reference any matters to be stayed, and to the contrary, it said all issues were going to be sent to the arbitrator, and the arbitrators were to decide the scope and enforceability of the arbitration clause. Essentially, the trial court left nothing in front of it to decide. But once again, we feel that the trial court's initial obligation was to determine whether there was a valid agreement to arbitrate in the first place. In the absence of a valid agreement to arbitrate, there is nothing to refer to an arbitrator, and there's no arbitrator that exists. Counsel, may I ask you a question about the arbitration agreement? Sure. It refers throughout to this agreement, so right in the first line, without limiting any rights set forth and other provisions of this agreement. Is this agreement the two-page arbitration document, or is it all of the pages of that document plus the admission contract? Well, we contend it's the arbitration agreement, and that there were no claims brought for violation of the arbitration agreement, and that was raised in front of the trial court, and the trial court declined to hear it. Don't we construe documents executed at the same time as part of the same transaction to basically be manifestations of the same agreement? Well, I think in this case, it was vague and ambiguous as to what it meant by this agreement, and under those circumstances, since they were the drafters of the agreement, it would need to be construed against them and in favor of those opposing the arbitration agreement or enforcement of the arbitration agreement. But once again, we believe that issue should have been decided by the trial court after having an evidentiary hearing or at least allowing some discovery on that point, which was not permitted in these circumstances. And the other issue would have been whether the agreement, even if it was read together and it was formed as one document, whether it continued to be viable after the death of Bonnie Stone. What's the consequence of the document referring to discharge rather than death? I don't think anything. I think they're synonymous. She could either have been discharged to a hospital, could have been discharged home, or upon death, she's discharged and relieved of further obligations under the contract. And as you know, that the Supreme Court in the Clanton case said, unless the contract expressly provides otherwise, it's going to be interpreted to end at death, and therefore, it's no longer enforceable. And in fact, it says, claims brought pursuant to the Survival Act and initiated after the resident's death are not subject to arbitration when the agreement terminated at the resident's death. Now, in this case, the court referred more issues than just the survival claims. She sent everything to the arbitrator. But regardless, the first threshold decision she needed to make or the trial court needed to make was whether that agreement survived the death of Bonnie Stone. Doesn't the case law say the first decision has to be made as whether it goes to arbitration? And that includes determining whether there was formation of the arbitration agreement and formation of the contract? Absolutely. The threshold decision for the trial court is whether there is an agreement to arbitrate. And whether it's an agreement to terminate. Under the FAA or the Illinois Uniform Arbitration Act, the first thing the court needs to consider is the state court defenses to that agreement. And in this case, that just did not happen, because there can be no referral to arbitration unless there was an agreement between the parties to arbitrate. And then again, only those parties that are part of the agreement have to go to arbitration. As this court, I mean, as our Supreme Court said in Carter v. Oden Healthcare, that only the parties to the contract can be required to arbitrate. And in this case, the trial court not only sent the survivor claims, but also sent the wrongful death claims, which of course, the surviving next of kin were not parties to this contract. And likewise, unlimited Unlimited Development Inc. was not a signatory or mentioned in the admission contract or the arbitration agreement. And therefore, they cannot seek to enforce that. So any claim against Unlimited Development Corp. should have been carved out. But of course, it was not in this case. So let me interrupt you. Do you agree that there is a delegation clause in this arbitration addendum that's attached to the admission contract? Yes, Your Honor, there is. What's the significance of the delegation clause? Well, I think what it attempted to do was delegate all issues and divest the trial court of its authority to consider any defenses. But the parties cannot contract away. Well, the first thing the court needed to do was decide whether that was a valid agreement. If it was not a valid agreement and enforceable, then the existence or non existence of the delegation clause and the scope of the delegation clause do not come into existence. Well, is there not a difference between contract formation and contract validity and perhaps contract formation might be something for the court to examine versus these defenses of validity? Well, yes, I think the court needs to. The first step was contract formation. And then I guess the second question would be whether it was enforceable or valid under the circumstances of our facts. But once again, the trial court never reached those orders. And then one of the other issues we raised was the 42 CFR 483.70, which is the federal Medicare rules and Medicaid rules that apply to that requires that they be made that the arbitration agreement is not part of the contract, that it's a standalone provision, and that it provides in there that the there is no requirement to sign it as a condition of admission, and that they don't need to, the family or the resident does not need to agree to that term. Um, the trial court found that it had no application to our facts since it didn't come into existence until nine days after she signed the agreements, or until after the representative signed the agreements. Of course, we argued in our position, but there wasn't a fact at the time that the agreement was sought to be enforced. And if there was a contract, the contract contemplated changes to federal and state law and said that that would be applied and the remainder of the contract will continue to exist. How would you judge compliance at the time of execution, with requirements that didn't exist at the time of execution that doesn't make a great deal of sense? Well, I mean, I think it would take discovery, but I think that they, the court, assume there was not compliance. But the point is, it wasn't a requirement at the time they signed. How could you find it to be non-compliant with requirements that didn't exist at the time the contract was executed? Compliance would have to have happened at execution. At the time that it was signed, the status of 483.70 was that there was no arbitration provisions in there, but it was subject to a stay order out of the Eighth Circuit. But it had not been declared unconstitutional or invalid. So then the rule changed to allow for arbitration provisions in limited forms. But there are changes to laws all the time that have to be applied to circumstances. And I think it would not be unfair or unjust for the courts to examine whether or not this was, whether they were made a condition upon admission and whether the family was made aware that there was no need to sign that if they chose not to. So retroactively impair a contract, is that what we're arguing for? You would be, yeah, there would be application. It wouldn't impair the contract, it just would impair this singular arbitration agreement, but not the contract because the arbitration agreement was separate. But the contract was separate. And the last issue that we thought that the court should have considered, well, the trial court declined to consider the issues of an unconscionability, whether it be procedural unconscionability or substantive unconscionability. And this court addressed this matter back in August in the Mulligan v. Loft Rehabilitation Nursing case. And I'm quoting from the opinion that says, however, the order must be amended to reflect unconscionability is not a matter for the arbitrator since it was a matter for the court in this case. And that's what we think should have happened here. Was there a delegation clause in that Mulligan case? I believe there was, your honor. But once again, since that issue goes to the contract formation, an unconscionability goes to the contract formation. You cannot get into the scope of delegation clause unless you've reached those first two hurdles, which was not done so here. And then the last issue, I know I'm running out of time, was the trial court needed to consider whether Bonnie Stone did a proper conveyance of authority to Lou Anne Mykoff to sign the agreements on her behalf. The court made mention of a health care power of attorney. The health care power of attorney in this case was a mishmash of issues, but under that provision titled health care power of attorney, it said that she, Bonnie would retain decision-making authority until she was determined to have been incompetent by her position. That never happened in this case. Likewise, health care power of attorney is typically not the kind of document that affords authority to waive attorney's fees, agree to be responsible for attorney's fees, or waive the jury trial. Does the record also show a financial power of attorney? There was not a financial power of attorney that I recall, Your Honor. It was just this one document which consists of a living will, health care power of attorney, and a designation of a health care agent. In this case, the trial court relied on the existence of the health care power of attorney and did not rely on the existence of a property power of attorney. I believe I'm out of time. I'm not sure that you're out of time, but well, you are out of time. Some questions on your part. Good job. You have rebuttal if you would like it. Ms. Fudge, are you ready to proceed? I am. May it please the court. The trial court's order compelling this case to arbitration should be affirmed for the following reasons. First, the Federal Arbitration Act, which I will refer to today as the FAA, undisputedly governs the subject agreement to arbitrate and your decision today. And under the commands of the FAA, when facing a motion to compel arbitration, the court's jurisdictional power is extremely limited. Specifically, the court's role is limited to deciding whether there was the making of a written agreement to arbitrate. That is a question of contract formation. Ms. Fudge, may I interrupt you? In regards to the FAA, Illinois has a Uniform Arbitration Act. Does it operate in this case? Is it something we should look at? I don't believe you should look at it at all. I believe the only place to be at is the Federal Arbitration Act. Why is that? It's because the Federal Arbitration Act is the substantive law, and cases like Buckeye make that clear, that the FAA applies, particularly while we're here, Sections 2 and 3 are substantive laws, not merely procedural laws. And Buckeye makes it clear that those substantive rules of the FAA apply with equal force in state courts as well as in federal courts. Is Section 2 of the Illinois Uniform Arbitration Act substantially similar to the FAA's provision? I believe it is, Your Honor, but I didn't do a side-by-side to prepare for the hearing today. Well, the UAA says that on application of a party showing an opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration. Is that substantially similar to the FAA? It is. Upon the court finding the making of a written agreement to arbitrate, yes, the court should be compelling the parties to arbitration. Yes, sir. So here, you would agree that the trial court first needs to determine the existence of an arbitration agreement. And I think you would say that it did, in fact, find that. Is that right? Yes, although I don't want to get too much into word salad, but the word existence is a little bit vague. Let's just say this way. The FAA makes it clear that the court must decide whether there was the making of a written agreement to arbitrate. You can call that existence if you want, but the FAA uses the word making. Well, the word salad maybe is giving it short shrift. I think this is a very major component of this case, who is to determine the existence of the contract and case law coming from the United States Supreme Court to the Seventh Circuit Court of Appeals to the Illinois Supreme Court talks about the court determining the existence of an arbitration agreement. Would you agree? I do. And Your Honor, here, it's undisputed. We have the existence of a written agreement to arbitrate. You have it in your record here. It exists. Let's start with that then so that we're on the same page. Here, you agree that the court should determine the existence or non-existence of the arbitration agreement. Is that right? I will answer it this way. The court's role, according to the FAA and the case law, is to decide whether there was the making of a written agreement to arbitrate, and that is a contract formation question which requires offer acceptance consideration. Once the court finds offer acceptance consideration, I guess you could say, yes, the court has found that there is the existence of a made agreement to arbitrate. Ms. Fudge, I don't want to spend too much time on this, but in your own brief, you indicate that it's for the court to determine the existence of an arbitration agreement. Did you not? I don't know if I had that exact word, but I'm just trying to explain to you what that would mean if I did say it that way, being very specific with what the FAA requires. In this case, did the trial court determine the existence of an arbitration agreement? Yes. I've looked through the two orders and I've tried to find where it made that finding. Are you able to point that out quickly? If you can't, that's fine, but would it have been incumbent on the trial court to determine in its order that an arbitration agreement existed? I believe if you look at the hearing transcript which was in the court record and you combine it with the two orders, it is abundantly clear that the court must have found the making of a written agreement to arbitrate in order to compel the case to arbitration. The court recognized that it was looking at whether there was a making. It looked at whether the daughter had the authority to assent to that contract. We should look to multiple sources including the transcript. I believe if you want the full picture of what was in the trial court's mind, yes, sir. Well, a specific explicit finding would be helpful, but it doesn't appear that we have that. Would you agree that at least by August 17, 2020, the date of Bonnie Stone's death, that she had been discharged as set forth in the contract? No, I don't, your honor, and if you'd like me to jump ahead, I will, but I would like to. Please, if you could answer that question, I would appreciate that. There's no evidence in the record, if we want to be specific, that she was ever discharged. I believe there just is none. I believe she actually passed away in the nursing home. She was not discharged, but regarding the Clanton decision, if you just want to jump there, the issue of, you know, this termination. First, let me say this. The Clanton decision is distinguishable and it does not bind your decision today on this case for two reasons. Number one, Clanton did not apply the FAA, including it did not apply the commands of the Buckeye United States Supreme Court rule of severability. Secondly, the Clanton case did not involve any party triggering the delegation clause. So you would say Clanton was wrongly decided? I believe it was wrongly decided, but more importantly, it's different than what you're looking at today. You, the three justices today, are required to apply the FAA. You are commanded to apply the Buckeye rule of severability and you are commanded to recognize that my client triggered the delegation clause. You're commanded to recognize the estate failed to ever make a decision. This court has no power, but to find the delegation clause valid under section two of the FAA and to enforce it under section three of the FAA. And even if you want to go one step further and look at the delegation clause here, which is what we're here compelling arbitration under, it is just one sentence on page one of the two page arbitration agreement. The delegation clause is the sentence that says we shall arbitrate under the AAA rules. And if you look at the four corners of that delegation clause, which is all you're allowed to look at for purposes of the motion and the issues, there's no expiration date in our delegation clause. There's no termination date in our delegation clause. And this court cannot rewrite that delegation clause to insert a deadline or a termination or an expiration date where one does not exist. You mentioned the AAA rules. What AAA rules? The AAA rule is rule seven, A and B. And it is the rule that delegates to the arbitrator all questions of the existence, scope, or validity of the arbitration agreement itself, as well as the arbitrability of any claim. Well, you in your briefing referred to the commercial arbitration rules. Is that right? Yes, but it doesn't matter. Even if you looked at the consumer rules, it has the identical delegation clause in it. Well, we'll talk about that. So the AAA has commercial arbitration rules. It has construction industry arbitration rules. It has consumer arbitration rules. It has employment arbitration rules, and it has labor arbitration rules. Is that right? I don't know if all of those are correct, Your Honor, but I do know that as between the commercial and the consumer, they have the identical delegation clause in them. But it's not specified. You would agree with that. What's not specified? In the arbitration agreement that you're referring to, it just says arbitration rules, and you have selected commercial arbitration rules to apply here. We have, but Your Honor, even if you wanted to get into the issue of whether you would be able to interpret or do contract construction of which AAA rules, that as well would be delegated to the arbitrator to decide how to interpret or construe that particular clause. Well, as a threshold issue, you're arguing that there is a valid delegation clause, and the delegation clause is set forth in the contract as paragraph 7A of the commercial arbitration rules. So I think simply because you're arguing it now, it is a matter for the court. Well, I'll say this, Your Honor. I think in our briefing, we've pointed out that 11 out of 12 district courts throughout the United States from sea to shining sea have looked at arbitration agreements which adopt the AAA rules, and all of them have found that a contract that says it will be arbitrated under the AAA rules is a clear and unmistakable delegation clause. Have any of the cases that you've cited to involve an individual party to a contract, excuse me, who subsequently dies and the other party has moved to compel arbitration? In other words, a case like this? I'm not sure. No? I can't think of one off the top of my head, Your Honor. Well, so is there a problem then in terms of suggesting that the cases that you have cited are compelling authority for whether or not there is a valid delegation of this issue here? I don't. And I think that arbitration is just a matter of contract. The general rule of contract law is that a contract survives the death of a party. What about the United States Supreme Court decision of John Wiley and Sons versus Livingston? You're familiar with that case? Can you tell me what year that case is, Your Honor? That was, excuse me, I'll tell you. That was a 1964 case. Well, I will say this first and foremost. That was long before the Buckeye case came down in 2007, 2006. It was before Rent-A-Center and it was before Henry Schein. And I think that United States Supreme Court- It was then, excuse me, counsel, it was then cited with approval by Green Tree Financial Corporation, another US Supreme Court case in 2003. But the point of it was the threshold question, and I'm quoting from John Wiley and Sons, the threshold question in this controversy is who shall decide whether the arbitration provisions of the collective bargaining agreement survive the Wiley-Innerscience merger so as to be operative against Wiley. Both parties urge that this question is for the courts. Past cases leave no doubt that this is correct. So there, two companies merged. There had been an arbitration agreement entered into by one of the companies. The court was looking to determine whether or not that arbitration agreement survived the merger. Somewhat similar to what we have here in a way. No, Your Honor- But it was for the courts to decide. No, Your Honor, with all due respect, you're quoting old law. You need to pick up starting from Buckeye, continuing on with Rent-A-Center, and ending more recently with the unanimous Supreme Court decision written by Justice Kavanaugh called Henry Schein. It makes it beyond debate that the question of who decides contract enforceability is for the arbitrator, who decides contract interpretation of any provisions outside of our delegation clause is for the arbitrator. And so the old case law is what it is. It's old, and it has been clarified and changed by more recent case law, which we've cited in our brief. Well, then we get back to the word salad, word existence, and that then potentially is the key here. Is that right? I don't really know what you're trying to make of the word existence, Your Honor. We have offer acceptance consideration here. It's in the record. There was the- And the death of a party. Arbitrate. We triggered the delegation clause within that, which then triggers the Buckeye, that this court's role was limited. This court needs to put the blinders on. It needs to isolate its focus on the arbitration agreement, which is two pages, but more specifically within that, the delegation clause. And this court must recognize that the estate failed to ever, ever make an attack directed specifically to the validity of that delegation clause. And once you find that, you are left with the Henry Schein repercussions, which means this case goes off to arbitration. Now, in fairness to the estate, let me correct myself. There's one challenge that they did make to the making of the written agreement to arbitrate that we're here seeking to compel arbitration under, and that has to do with the daughter's authority. And I want to correct something the estate's attorney said, because it is clear under the court's second order issued in this case in May, in the second paragraph, the court expressly states that the and they were both in the court record. And that is what gave the daughter the authority. That gives you that third element of contract formation, meaning the acceptance or the ascension of the written agreement to arbitration. May I ask a question about contract formation? Doesn't that implicitly involve determining the parties to the contract? No, it doesn't. How can you not, how can you not determine, offer an acceptance without determining who made the offer and who made the acceptance? Let me answer it this way. I think here from the record, we know that the contract was made between the nursing home on one hand and Mrs. Stone through her agent on the other. Now the question of- We also know that the beneficiaries to a wrongful death claim did not, they were not parties to the be subject to arbitration. Let me answer it this way. First of all, there's no record evidence here that there are any errors. It's not in the record. So we'd be speculating. There's no claim and we don't have to worry about it, but let's assume that there is so that we're not wasting our time. Well, under this case, the delegation clause, who is bound to, okay, so once you find the making of the written agreement to arbitrate here, the next question is, well, who's bound to that and what will the issue of whether the wrongful death claim is within the scope of the arbitration agreement is delegated to the arbitrator? Because rule seven of the AAA rules delegates scope to the arbitrator as well as quite frankly- Okay, but we're talking about contract formation before we delegate to the arbitrator and contract formation means that the party had to have the doesn't govern their contract with the gardeners at the nursing home because they weren't a party to it, right? We are talking about a separate claim that arises in favor of a separate party under the wrongful death act as a matter of Illinois law. How could somebody other than that party contract away their right to have that claim heard in court? Because we have two parties in this The estate is bound as a party to this arbitration agreement. Right, but that's not the party to a wrongful death claim. But the estate is bringing the claim and now you're asking what additional claims are subject to that arbitration agreement. The wrongful death claim is, I believe, bound to the arbitration agreement. I know we're getting into the Carter issue and maybe perhaps we're out of time, but it really is because we're different than Carter. We are under the FAA and a delegation clause. Carter was not. Our delegation clause says whether or not a claim is arbitrable, that's in rule 7a, is solely within the jurisdiction of the arbitrator. But we get there by applying the contract and we're still in a question of formation. There's no contract with the wrongful death beneficiary. There is a contract. It has to go off to arbitration. Now the arbitrator might decide that you're right. The arbitrator might decide that if there are errors, then the errors have to come back and their claim needs to remain in the court system. But who gets to make that decision is different than who is going to prevail on that question. And Henry Schein makes that abundantly clear. Do not confuse who gets to decide on the question with who is going to prevail ultimately on that question. And I'll leave you with this. Henry Schein says, even if you think my argument I just made is wholly groundless, even if you think my argument is frivolous, that the error should be going off to arbitration, it doesn't matter. The court says in Henry Schein that the court has to let that be a decision made by the arbitrator. And Justice Turner, if time expires during this question and answer, I ask the court's indulgence with the time requirements here. We've asked you a lot of questions. I've asked you a lot of questions and I apologize for monopolizing the time here. But here you had the contract, the residential contract, entered into at the same time as the arbitration agreement. Is that right? Yes. Clanton would say that upon the resident's death, the contract terminated. That's what it says, correct? Yeah, because it was dealing with a different contract that had a termination upon death clause, which we don't have, but yes. Okay. There is also Supreme Court authority, and I'm just going to read from Gallagher versus Lenart, L-E-N-A-R-T, which is 226 Illinois 2nd, excuse me, 208. And it says that it's a longstanding principle that instruments that are executed at the same time by the same parties for the same purpose and in the course of the same transaction are regarded as one contract and will be construed together. Now, if you take what Clanton did and then you apply that rule of construction here that I just read, wouldn't that mean that in the case of a resident's death, that both the contract and the arbitration agreement would terminate as of the date of the resident's death? No, I disagree. I agree with the concept that generally, when you're talking about contracts, contracts signed by the same parties at the same time for the same purpose do get construed together. However, when you are dealing specifically with an arbitration type of contract, you must also, you are commanded to also respect the Buckeye rule of severability. Some people call it the rule of separability of that written agreement to arbitrate. And rule means that that written agreement to arbitrate is separate. It stands alone and is distinct from the underlying contract in which it is contained for the purposes of the court deciding a motion to compel arbitration. So you can kind of have both of those concepts going on at the same time. Okay. And just wondering about the applicability of Buckeye here, because reading from Buckeye, it says challenges to the validity of arbitration agreements upon such grounds as exist at law or in equity for the revocation of any contract can be divided into two types. And then it talks about the two types. Are we talking about the revocation of a contract here? That is where we get into some more word salad with all due respect. The word revocation to this day has still not been decided completely by the United States Supreme Court. I think Clarence Thomas has a decision out there where he kind of goes, I don't really know. I will also say this, even the words validity and enforceability, we have to be very careful when we read these decisions. And I've studied this for 15 years now. When Buckeye uses the word validity, it really means enforceability. When Renner Center uses the word validity, it also means enforceability. Henry Schein uses it a little bit differently, and it gets confusing. But it doesn't take away from the fact that under Buckeye, the arbitration agreement is separate for purposes of you, again, putting your blinders on and looking just at the four corners of the arbitration agreement and deciding whether there's an offer, acceptance, and consideration. Was it made? Here, it was made. It has a delegation clause. The delegation clause was never attacked with specificity by the estate. So just like Mr. Jackson in Renner Center failed to attack with specificity, the validity of the delegation clause in Renner Center, so too has the estate in this case. That's left you with no power but to apply sections two and three of the FAA and affirm the order compelling this case to arbitration. Thanks for answering my question. Justice Harris, is that your last question then? It is. Okay, very good. Thank you for your argument. Is there any rebuttal? Just very briefly, Your Honor. One thing I just wanted to make clear, there was a statement made that there was one plaintiff and one defendant, and that is incorrect. There was unlimited development, Inc., and Jerseyville Manor, which were two defendants, two separate defendants. Only Jerseyville Manor is listed in the contract. And then just to circle back, whether you look at the Illinois Uniform Arbitration Act or if you look at the FAA, both give an abundance of clarity to the fact that you have to address the state law issues before you move on to the federal issues. I think that's very clear under the FAA section two that you still look at such grounds that exist as existed state law or an equity for the revocation of any contract or is otherwise provided for chapter four. So, those issues have to be resolved before you ever get into the issue of a delegation clause or the FAA or any federal issues whatsoever. And that's all I have unless somebody has a question for me. I see no questions. Thanks to both of you for your arguments. The case is submitted and the court will now stand in recess.